**ORIGINAL**

**CIVIL COVER SHEET**

JS 44 (Rev. 12/07) (cand rev 1-16-08)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
SECURITIES AND EXCHANGE COMMISSION

### DEFENDANTS
BRAKE, JOHN EARL

**EDL**

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Los Angeles, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Securities and Exchange Commission
44 Montgomery Street, Suite 2600
San Francisco, CA 94104
(415) 705-2500

Attorneys (If Known)

**E-filing**

**ADR**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- [X] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☒ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | ☐ 871 IRS- Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities Other | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus Alien Detainee | | |
| | | | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. Section 77q(a); 15 U.S.C. Section 78j(b) and C.F.R. Section 240.10b-5 thereunder.

Brief description of cause:
Fradulent offering of securities

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)
☒ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE 8/27/08

SIGNATURE OF ATTORNEY OF RECORD

MARC J. FAGEL (Cal. Bar No. 154425)
JOHN S. YUN (Cal. Bar No. 112260)
 (yunj@sec.gov)
KRISTIN A. SNYDER (Cal. Bar No. 187175)
 (snyderk@sec.gov)

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
44 Montgomery Street, Suite 2600
San Francisco, California 94104
Telephone: (415) 705-2500
Facsimile: (415) 705-2501

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SECURITIES AND EXCHANGE COMMISSION,

  Plaintiff,

  vs.

JOHN EARL BRAKE,

  Defendant.

CV 08 4089

COMPLAINT

DEMAND FOR JURY TRIAL

Plaintiff Securities and Exchange Commission ("Commission") alleges:

### SUMMARY OF THE ACTION

1. This lawsuit involves fraudulent offerings of securities in the form of promissory notes by defendant John Earl Brake ("Brake") from at least 1999 through 2005. During that time period, Brake defrauded investors by misappropriating investor funds for his own use and falsely representing that one to two year promissory note investments offered by his company, Pinnacle West, LLC, were secured by real estate the company owned. In reality, Pinnacle never owned any property, holding at best options to purchase or uncompleted purchase contracts. In addition, Pinnacle never completed a real estate project. As a result of Brake's false statements, investors

COMPLAINT

purchased roughly $20 million in Pinnacle promissory notes from 1999 through 2005. Investors have lost millions of dollars of the money invested with Pinnacle.

2. Brake also treated investor money as if it was his own, using Pinnacle's bank account as a slush fund for himself. He used millions of dollars of investor funds to pay for a myriad of improper, unauthorized personal expenses including cars, an expensive beachfront rental home in Carmel, private jet travel, jewelry, a chauffeur, and lavish shopping sprees.

3. As a result of Brake's actions, he violated the federal securities laws, including the antifraud statutes, by misappropriating investor funds and making materially false and misleading statements in connection with the purchase or sale of securities. The Commission seeks to enjoin Brake permanently from further conduct that violates the securities laws, seeks disgorgement of Brake's ill-gotten gains and payment of civil money penalties.

## JURISDICTION, VENUE, AND INTRADISTRICT ASSIGNMENT

4. The Commission brings this action pursuant to Sections 20(b) and 20(d) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77t(b) and 77t(d)], and Sections 21(d) and 21(e) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78u(d) and 78u(e)]. This Court has jurisdiction over this action pursuant to Sections 20(d)(1) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(d)(1) and 77v(a)], and Sections 21(d)(3), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(3), 78u(e), and 78aa].

5. Venue in this district is proper pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because a substantial portion of the conduct alleged in this complaint occurred within the Northern District of California and defendant Brake resided, and conducted business, in the district for a portion of the relevant time period.

6. Assignment to the San Francisco Division of this Court is proper because a substantial part of the events or omissions that give rise to claims alleged in this Complaint occurred in San Mateo County. In addition, some of the defrauded investors reside in this division.

**DEFENDANT**

7.  Defendant John Earl Brake ("Brake"), age 56, previously resided in Carmel, California, and resides currently in Santa Monica, California. Brake is the sole shareholder of Pinnacle West LLC ("Pinnacle"), a private California company formed in 1998 that purports to develop large real estate projects. During the Commission staff's investigation, Brake testified for less than one day, but agreed to return for follow-up testimony. Brake subsequently indicated, however, that he would assert his Fifth Amendment right against self-incrimination if he appeared for follow-up testimony.

8.  During all relevant times, Brake held at least a 98% ownership interest in Pinnacle. Brake marketed Pinnacle to investors as a company that developed large scale real estate projects, including a project in Big Sur, California and a project in Morgan Hill, California. Pinnacle, however, never successfully completed or owned any projects. While Pinnacle still exists as an entity, it does not appear to own any assets.

**FACTUAL ALLEGATIONS**

**A.  Background of Brake's Issuance of the Pinnacle Promissory Note Investments**

9.  When Brake formed Pinnacle in 1998, it had minimal operating capital and required financing to acquire and develop its proposed real estate projects. Brake sought help with fundraising from, among others, Mark J. P. Boucher, an investment adviser based in Portola Valley, California. Brake made various promises to compensate Boucher for any investor funds he supplied to Brake. From 1999 through 2005, Boucher's clients supplied the bulk of the roughly $20 million raised in the Pinnacle offering, and Boucher advertised the notes to clients in his monthly subscription based newsletter. Although investors in the Pinnacle notes are scattered throughout the United States, some are based in counties within this division, including San Mateo and Alameda.

10. Investors in Pinnacle received promissory notes, signed by Brake, that promised to pay interest ranging from 12% to 20% per annum. The notes generally promised full repayment after a period ranging from twelve to twenty-four months, although they typically contained a rollover provision that allowed for additional extensions of time on repayment.

11. Investors were told that they would be repaid with interest when Pinnacle secured longer-term financing for its projects, or from the profits generated by the sale of the projects upon completion. None of the proposed Pinnacle projects was ever completed. To the extent that any investors received partial or full repayment of their investments, they were paid using funds supplied by new investors.

12. The promissory notes for the Pinnacle projects are securities. The notes were raised for a business purpose, i.e. to make loans for the development of large scale real estate projects. From roughly 1999 through at least 2004, the notes were offered to numerous investors throughout the country through telephone solicitations or in advertisements in Boucher's monthly subscription newsletter. The notes were marketed as investments to potential investors, including offering 18-20% annual interest. Moreover, no other regulatory scheme is in place to regulate the notes, other than the protections provided by the securities laws.

**B.    Brake Misled Investors About the Security And Collateral for the Pinnacle Notes**

13. Throughout the period of the offering from 1999 through 2005, Brake made misrepresentations to investors, and failed to tell them material information, about the security for their investments in Pinnacle to induce them to invest in the Pinnacle notes. Specifically, Brake signed promissory notes on Pinnacle's behalf that falsely stated that investors were receiving "collateral" for their investments. For example, during at least the time period 1999 through January 2005, Pinnacle notes issued to investors describe various specific properties as security for the investors' investments, and state that the "following properties referred to herein are to be used as security and collateral for enforcing collection of this note should default occur." The notes were then provided to investors through a variety of means, including the mails, facsimile, and in-person delivery.

14. In reality, however, the Pinnacle notes were unsecured investments with no true security or collateral underlying the notes. Pinnacle never owned property, and merely held option agreements that never materialized into final purchase contracts, or entered into purchase agreements that never closed escrow. Over the period of the offering, Pinnacle lost numerous real estate projects that were listed as purported "security" and "collateral" for its promissory notes.

COMPLAINT                                            -4-

15. Brake also used false and misleading marketing brochures to encourage new and existing investors to make investments in, or increase their investments in, the Pinnacle notes. The brochures provided details about the properties that Pinnacle was purporting to develop and implied falsely that Pinnacle owned the land underlying each proposed development. Brake caused these misleading marketing brochures to be prepared and disseminated to current and prospective investors through the mails and hand delivery.

16. As Pinnacle's principal, Brake knew that Pinnacle did not hold title to the properties and did not have assets that could be used as collateral if default occurred.

17. Brake knew or was reckless in not knowing that the materials he disseminated to investors were false and misleading.

### C. Brake Misappropriated Millions of Dollars of Investor Funds for His Own Use

18. Brake never maintained a personal checking account, and instead, used the Pinnacle bank accounts as though they were his personal slush funds. Over at least the period 2001 through 2005, Brake made undisclosed withdrawals of millions of dollars of investor funds from the Pinnacle accounts to pay for, among other things, lavish shopping sprees, private jet travel, a personal chauffeur, a beachfront home rental in Carmel, California, several Mercedes Benz automobiles, jewelry, and expensive hotel stays.

19. Between March 2001 and December 2004 alone, he spent at least $5 million of investor funds on lavish personal expenses. The $5 million figure does not include substantial cash withdrawals.

20. Pinnacle was constantly in need of funding, and, as a result of Brake's lavish spending, Pinnacle consistently missed required option payments on its real estate projects or was unable to pay legitimate project-related expenses.

21. Brake was not entitled to use investor funds to pay for personal expenses. Brake also lied about his spending to Boucher in an apparent attempt to cover up his misappropriation. For example, Brake falsely claimed that he did not pay for his private jet travel with investor funds. Pinnacle's bank records, however, demonstrate that Brake spent investor money to pay for his jet travel.

22. As early as April 2001, Brake was warned in a letter he received from Boucher, whose clients invested heavily in the Pinnacle notes, Boucher identified "substantial evidence of embezzlement" by Brake and admonished him not to spend any more investor funds on personal expenses. Despite this warning, Brake continued his lavish spending and misuse of investor funds.

23. Brake knew, or was reckless in not knowing, that he was misappropriating investor funds.

## FIRST CLAIM FOR RELIEF

### (Violations of Section 17(a) of the Securities Act)

24. The Commission realleges and incorporates by reference paragraphs 1 through 23.

25. By engaging in the acts and conduct alleged above, Brake, directly or indirectly, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails: (a) with scienter employed devices, schemes, or artifices to defraud; (b) obtained money or property by means of untrue statements of material fact or by omitting to state a material fact necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business which operated or would operate as a fraud or deceit upon the purchasers.

26. By reason of the foregoing, Brake has violated and, unless restrained and enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)

27. The Commission realleges and incorporates by reference Paragraphs 1 through 23.

28. By engaging in the acts and conduct alleged above, Brake, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national security exchange, with scienter: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, or

COMPLAINT                -6-

1 courses of business which operated or would operate as a fraud or deceit upon other persons, including purchasers and sellers of securities.

29. By reason of the foregoing, Brake has violated and, unless restrained and enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. §§ 240.10b-5] thereunder.

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court:

I.

Preliminarily and permanently enjoin defendant Brake from directly or indirectly violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

II.

Order defendant Brake to disgorge all ill-gotten gains according to proof, plus prejudgment interest.

III.

Order defendant Brake to pay civil money penalties pursuant to Section 20(d)(1) of the Securities Act [15 U.S.C. § 77t(d)(1)], and Section 21A of the Exchange Act [15 U.S.C. § 78u-1].

IV.

Retain jurisdiction of this action in accordance with the principles of equity and the Federal Rules of Civil Procedure in order to implement and carry out the terms of all orders and decrees that may be entered, or to entertain any suitable application or motion for additional relief within the jurisdiction of this Court.

1  V.

2  Grant such other and further relief as this Court may deem just, equitable, and necessary.

3

4  Dated: August 27, 2008

5  Respectfully submitted:

6

7

8  By: /s/ Kristin Snyder
   Marc J. Fagel
   John S. Yun
9  Kristin A. Snyder

10 Attorneys for Plaintiff
   SECURITIES AND EXCHANGE COMMISSION
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                          -8-

**DEMAND FOR JURY TRIAL**

The Commission hereby demands a jury trial of its claims in this case.

Dated: August 27, 2008

                                              Respectfully submitted:

By: _/s/ Kristin Snyder_____
Marc J. Fagel
John S. Yun
Kristin A. Snyder

Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

COMPLAINT